NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KELLI J. HARRELL, | |
| Plaintiff, | Civil Action No. 16-1433 (JLL) |
| v. | **OPINION** |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**LINARES**, District Judge.

This matter comes before the Court upon the appeal of Kelli J. Harrell ("Plaintiff") from the final decision of the Commissioner upholding the final determination by Administrative Law Judge ("ALJ") Donna A. Krappa denying Plaintiff's application for disability insurance benefits ("DIBs") and for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). The Court resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.1(f). The Court has reviewed the parties' submissions. For the following reasons, the Court affirms the ALJ's decision.

### I. BACKGROUND[1]

The Court writes for the parties who are familiar with the facts and procedural history of the case. The Court therefore specifically addresses in the discussion below only those facts relevant to the issues raised on appeal.

---

[1] "R." refers to the Administrative Record, which uses continuous pagination and can be found at ECF No. 11.

## II.    STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and "[i]t is less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Additionally, under the Act, disability must be established by objective medical evidence. To this end, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." 42 U.S.C. § 423(d)(5)(A). Instead, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

*Id.*; *see* 42 U.S.C. § 1382c(a)(3)(A). Factors to consider in determining how to weigh evidence from medical sources include: (1) the examining relationship; (2) the treatment relationship, including the length, frequency, nature, and extent of the treatment; (3) the supportability of the opinion; (4) its consistency with the record as a whole; and (5) the specialization of the individual giving the opinion. 20 C.F.R. § 404.1527(c).

The "substantial evidence standard is a deferential standard of review." *Jones*, 364 F.3d at 503. The ALJ is required to "set forth the reasons for his decision" and not merely make conclusory unexplained findings. *Burnett v. Comm'r of Soc. Sec,* 220 F.3d 112, 119 (3d Cir. 2000). But, if the ALJ's decision is adequately explained and supported, the Court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan,*

970 F.2d 1178, 1182 (3d Cir. 1992). It does not matter if this Court "acting *de novo* might have reached a different conclusion" than the Commissioner. *Monsour Med. Ctr. V. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986)). Finally, the Third Circuit has made clear that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his [or her] analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505.

## III. THE FIVE STEP PROCESS AND THE ALJ'S DECISION

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. Pursuant to the Act, a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382(a)(1)(A)-(B) and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A person is disabled only if his physical or mental impairment(s) are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Third Circuit has summarized "the five step sequential evaluation for determining whether a claimant is under a disability, as set forth in 20 C.F.R. § 404.1520" as follows:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).
>
> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any

3

gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity [("RFC")] to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994).

If the claimant is unable to resume her former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled.

*Jones*, 364 F.3d at 118-19 (formatting and emphasis added). "The claimant bears the burden of proof for steps one, two, and four of this test. The Commissioner bears the burden of proof for the last step." *Sykes*, 228 F.3d at 263 (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987)). Neither party bears the burden of proof at step three. *Id*. at 263 n. 2.

The ALJ engaged in the above five-step sequential evaluation and found: (Step 1) that Plaintiff was no engaged in substantial gainful activity (R14); (Step 2) that Plaintiff suffers from the following severe impairments: a disorder of the back; a disorder of the right shoulder; a disorder of the right hip; and affective disorder (generalized anxiety / panic attacks) (R15); (Step 3) that Plaintiff did not suffer from a listed impairment or combination of impairments that met or medically equaled a listed impairment (*id*.); (RFC) that Plaintiff "is capable of the *exertional demands* of sedentary work as defined under the Regulations" and has additional limitations with respect to mental demands (R16); (Step 4) that Plaintiff "has no past employment that qualifies as 'prior relevant work' under the Regulations" and that "Accordingly, there is no need to determine whether [Plaintiff] is able to return to any of her prior relevant work" (R24). At step five, the

4

ALJ heard the testimony of a vocational expert. (*Id.* at 24-25) Ultimately, the ALJ "conclude[d] that, through the date last insured, considering [Plaintiff's] age, education, work experience, and [RFC, Plaintiff] was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (*Id.* at 25) For these reasons, the ALJ found Plaintiff not to be disabled. (*Id.*)

## IV. DISCUSSION

### A. ALJ's Consideration of Dr. Rubinfeld's Records

Plaintiff argues that "[t]he ALJ erred in failing to give controlling weight to the treating source opinions of Phillip J. Rubinfeld, M.D., in particular, his opinions as expressed in his 'Medical Source Statement of Ability to Do Work-Related Activities (Physical)' dated December 17, 2013." (Pl.'s Br. at 10).

In his Medical Source Statement, Dr. Rubinfeld opined that Plaintiff could lift and carry up to 10 pounds "occasionally" (R1242); she could sit for five hours in an eight hour work day (R1243); she experienced limitations to both her right and left shoulders (R1242, 1244); and she could "occasionally" push and pull (R1244). Plaintiff points out that Dr. Rubinfeld indicated that these limitations were present since his initial consultation with Plaintiff on October 7, 2008. (R 1245). In contrast to Dr. Rubinfeld's opinions in the Medical Source Statement, the ALJ concluded that Plaintiff could lift up to 10 pounds "frequently;" that she could sit for six hours in an eight-hour workday (if given the opportunity at the 45-minute to 1-hour mark to stretch for 3-5 minutes); that she was limited in terms of reaching only with regard to her left shoulder; and that she could perform unlimited pushing and pulling within the bounds of sedentary exertion. (R16).

While an ALJ must consider the opinions of treating physicians, "'[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity'" where it is not well supported or there is contradictory evidence. *Chandler v. Comm'r of Soc. Sec.*,

5

667 F.3d 356, 361 (3d. 2011) (alteration in original) (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)); 20 C.F.R. § 404.1527(c)(2); *see also Coleman v. Comm'r. of Soc. Sec. Admin.*, 494 Fed Appx 252, 254 (3d Cir. Sept. 5, 2012) ("'Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason.'") (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."); 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). That is, "[a] treating physician's opinion on the nature and severity of an impairment will be given controlling weight only where it is well-supported by the medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Salles v. Comm'r of Soc. Sec.*, 229 F. Appx 140, 148 (3d Cir. 2007).

In her Opinion, the ALJ stated that "[o]rdinarily, I would give great weight to a treating physician's opinion 20 CFR 404.1567(d)(2) and Social Security Ruling 96-2p; however, in case[s] such as this, where the conclusory opinion is unsupported and contradicted by substantial evidence, it will not be given great weight." (R23). The ALJ then concluded that "[a]n examination of Dr. Rubinfeld's progress notes reveals that they do not support his opinions." (Id.). Specifically, the

ALJ identified inconsistencies between Dr. Rubinfeld's opinions in the December 2013 Medical Source Statement and prior progress notes authored by Dr. Rubinfeld. (Id.).

For example, the ALJ noted that Dr. Rubinfeld's progress notes dating back to 2011 recorded that Plaintiff was reporting that her pain was controlled with pain medications and that her function was improved. (Id.). Specifically, the ALJ noted that "[i]n March 2011, the [Plaintiff] advised that she had lower back pain but her pain medications (Vicodin and Flexeril) were very effective (Exhibit 28F, page 5)." (R 23). In that record, Dr. Rubinfeld stated: "Pain controlled, function improved without significant side effects on current medication regimen." (Exh. 28F, page 6). The ALJ also noted that Dr. Rubinfeld's records from the next month indicated that Plaintiff reported having right shoulder surgery and that "she is healing well." (R23; Exh.28F, page 8). Further, the ALJ summarized Dr. Rubinfeld's notes from an October 2011 visit, in which the Doctor reported that Plaintiff had "full and symmetrical muscle strength, tone and size throughout upper and lower extremities" and "normal and symmetrical" deep tendon reflexes. (Exh.34F, page 8). Dr. Rubinfeld also noted that Plaintiff experienced severe tenderness on the right side of her sacral spine, SI joint, that the flexion of her spine was moderately limited, and that her extension was mildly limited bilaterally. (R23; Exh. 34F at page 8). Once again, however, Dr. Rubinfeld reported that "Pain controlled, function improved without significant side effects on current medication regime." (Id.; Exh. 34F, page 8).

The ALJ also considered Dr. Rubinfeld's notes from Plaintiff's visits in 2013, summarizing these notes as follows:

> [D]espite Dr. Rubinfeld's opinion that the claimant was able to sit for less than 6 hours (Exhibit 14F, page 2), during a April 2013 office visit, the doctor advised the claimant to continue with a home exercise program and to increase her activities (Exhibit 34F, page 41). It is noted that in August 2013, the doctor reported that she was experiencing increased pain in the past month, which he attributed to her tolerance to her current prescribed opioids. The doctor recommended increasing

the claimant's medication to better control her pain and improve function. She was given a prescription for Vicodin HP 10/660mg (Exhibit 34F, page 52). By October 2013, the doctor reported that the claimant rated her pain as mild-to-moderate only interfering with some of her daily activities (Exhibit 34F, pages 55-56).

(R23).

The ALJ summarized Dr. Rubinfeld's notes as follows: "[T]hese progress notes indicate that although the claimant continued to have some episodic back and neck pain, the claimant's pain was well controlled on her medications and her function was improved without significant side effects." (R23).

Thus, rather than attributing great weight to Dr. Rubinfeld's "conclusory" opinions in the December 17, 2013 Medical Source Statement, the ALJ attributed great weight to the opinions of Dr. Gary s. Friedman, the State Agency medical consultant who reviewed Plaintiff's records. (R23-24; R741-747). Dr. Friedman's report, upon which the ALJ accorded great weight, is dated January 16, 2010. (R747). According to the ALJ, "[n]othing added to the record since those assessments were made calls the validity of those assessments into question." (R24).

Plaintiff argues that the ALJ erred in according great weight to the report of Dr. Friedman. (Pl.'s Reply Br. at 5-6). Specifically, Plaintiff contends that Dr. Friedman did not review all of Plaintiff's records, did not examine Plaintiff, and did not consider the results of objective tests (such as Plaintiff's right shoulder surgery in January 2011 and March 2011 and Plaintiff's left shoulder MRI in October 2013). (Id.). However, and as Defendant observes, the ALJ specifically discussed each of these tests, but ultimately determined that "[n]othing added to the record since [Dr. Friedman's] assessments were made calls the validity of those assessments into question." (Def.'s Br. at 7-8, citing R20-24).

The Court finds that the ALJ did not err in crediting the opinions of Dr. Friedman over those of Dr. Rubinfeld. First, the ALJ clearly explained her reasons for not according the Medical

Source Statement of Dr. Rubinfeld "great weight." (R23). Pursuant to 20 C.F.R. § 404.1527(c)(2), a medical opinion is only entitled to to controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the Plaintiff's] case record." The ALJ was within her discretion in determining that the medical records that post-dated Dr. Friedman's opinions would not have changed those opinions. *See Chandler*, 667 F.3d at 361 ("[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required.") (quoting SSR96-6p (July 2, 1996)); *see also* SSR96-6p ("Because State agency medical and psychological consultants . . . are experts in the Social Security disability programs, . . . 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) . . ."). Finally, it is "[t]he ALJ–not treating of examining physicians or State agency consultants–[who] must make the ultimate disability and RFC determinations." *Id.* (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)).

### B. Whether the ALJ Properly Considered the Relevant Evidence

Next, Plaintiff argues that "the ALJ did not consider the entire record evidence in arriving at her decision denying the Plaintiff disability benefits." (Pl.'s Mov. Br. at 15). Specifically, Plaintiff maintains that the ALJ did not consider the relevant evidence pertaining to Plaintiff's: left shoulder injuries and limitations; right shoulder injuries and limitations; diagnosis of lumbar

stenosis; side effects from medications; mental and psychological impairments; impaired social functioning, and; impaired daily activities. (Id. at 15). The Court will review the ALJ's consideration of each of these topics, in turn.

### i.    Plaintiff's Left Shoulder Injuries and Limitations

At step two of the sequential evaluation process, the ALJ found that Plaintiff had the following severe impairments: a disorder of the back; a disorder of the right shoulder; a disorder of the right hip; and affective disorder (generalized anxiety/panic attacks). (R15). According to Plaintiff, the ALJ committed reversible error in failing to find that Plaintiff's left shoulder injuries constituted a severe impairment at step two and by failing to explain her rationale in this regard. (Pl.'s Mov. Br. at 15-17).

Defendant does not dispute that Plaintiff suffers from impairments to her left shoulder. (See Def.'s Br. at 9). According to Defendant, "[a]lthough the ALJ did not find that Plaintiff's left shoulder impairment was 'severe' at step two of the sequential evaluation process, this constitutes harmless error because the ALJ considered Plaintiff's left shoulder impairment throughout the remainder of the sequential evaluation process and assessed appropriate limitations of Plaintiff's left shoulder in her residual functional capacity." (Id.). The Court agrees.

"The step-two inquiry is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). Therefore, even if the ALJ erred with respect to one of the impairments that she found to be non-severe, such error would be harmless as she found other impairments to be severe, engaged in the full five-step evaluation, and accounted for related possible limitations in her RFC finding. *See Salles v. Comm'r of Soc. Sec.*, 229 F. Appx 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in Salles's favor at Step Two,

even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless." (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)).

In this case, the ALJ did not find other impairments to be severe and therefore engaged in the full five-step analysis. Additionally, the ALJ considered Plaintiff's left shoulder limitations as follows:

> Due to complaints of left shoulder pain, the claimant was referred for MRI studies. A report dated October 28, 2013, of an MRI of the claimant's left shoulder revealed the following: marked injury and partial tear of the Subsoapularis Tendon; marked extensive injury and partial tear of the Deltoid Muscle; no evidence of a complete and pull thickness tear or complete retraction of fibers; supraspinatus tendinopathy, with a probable element of calcific tendinitis; no evidence of full thickness tear of the Rotator Cuff; subacromial bursitis; tenosynovitis of the long head of the Biceps Tendon; and moderate size Glenohumeral Joint Effusion (Exhibit 34F, page 1-2).
>
> During a follow-up office visit on October 18, 2011, Dr. Rubinfeld reported that the claimant continued to complain of lower back pain and left shoulder pain. However, upon examination, the claimant's motor examination was noted to be full and symmetrical; the claimant had normal muscle strength, tone and size throughout her upper and lower extremities.
>
> . . .

(R21). Moreover, the ALJ accounted for Plaintiff's left shoulder limitations in her RFC findings. That is, the ALJ determined that Plaintiff can "perform no lifting of the left arm/shoulder to greater than 90 degrees and only occasionally to 90 degrees." (R16). Thus, although the ALJ did not make a specific finding that Plaintiff had a severe impairment with respect to her left shoulder, the Court finds this error to be harmless as the ALJ nevertheless considered Plaintiff's left shoulder limitations thoughout her analysis. *See Salles*, 229 F.App'x at 145, n.2.

### ii.    Plaintiff's Right Shoulder Injuries and Limitations

Next, Plaintiff contends that the ALJ erred in "fail[ing] to attribute any disability or limitations to the Plaintiff's right shoulder" despited finding, at step two, that Plaintiff suffered a severe impairment to her right shoulder. (Pl.'s Mov. Br. at 17-18).

Specifically, Plaintiff notes that in the ALJ's first unfavorable decision, which was remanded by the Appeals Counsel, the ALJ determined that Plaintiff cannot perform a job "that require[s] lifting of the right arm to no grater than 90 degrees and to 90 degrees only occasionally (no restriction on the use of the left arm)." (Id. at 18; R131). However, the ALJ's second Opinion, which Plaintiff now appeals, does not include this limitation to Plaintiff's right shoulder. (Id.).

In response, Defendant states that the ALJ appropriately accounted for Plaintiff's right shoulder limitations in her RFC by limiting her to "lift/carry 20 lbs. occasionally and 10 lbs. frequently." (Def.'s Br. at 10: R16). According to Defendant, "[t]he evidence did not justify any additional right shoulder limitations." (Id.).

Given the ALJ's review of the record with respect to Plaintiff's right shoulder, the Court finds that the ALJ's RFC is supported by substantial evidence. Specifically, the ALJ detailed the history of Plaintiff's right shoulder pain as follows:

> The claimant also complained of right shoulder pain. MRI testing of the claimant's right shoulder revealed substantial tendinopathy of the supraspinatus tendon with impingement and possible rotator cuff tear (Exhibit 22F). On March 25, 2011, the claimant underwent a right shoulder arthroscopic subacromal decompression performed by Dr. Robert T. Goldman *Exhibit 25F), followed by a course of physical therapy (Exhibits 26F and 27F).
>
> On March 23, 2010, Dr. Phillip Rubinfeld, the claimant's pain management physician, completed a [RFC] in which he opined that the claimant was able to: lift and carry 20 pounds: stand and/or walk for up to 2 hours in an 8-hour workday and sit for less than 6 hours in an 8-hour workday. Dr. Rubinfeld found that the claimant had no limitations for pushing, pulling, handling objects, or traveling (Exhibit 14F). The doctor reported that post-operative follow up visits indicated that she had almost full range of motion of the right shoulder and improving strength; however, in Dr. Rubinfeld's opinion the claimant should avoid strenuous activity with the right shoulder (Exhibit 26F).
>
> In compliance with the Appeals Council Remand Order, updated medical evidence was submitted in connection with the claimant's supplemental hearing held on November 6, 2013. This evidence included outpatient progress notes from Dr. Rubinfeld indicating that the claimant had an excellent outcome from the 2nd series of nerve blocks and moderate relief from physical therapy (Exhibit 28F, page 4). . . . In April 2011, the claimant presented to Dr. Rubinfeld's office. A[t] that time, she reported that she had right shoulder arthroscopic surgery and that she was

doing well post-op. Her pain was noted to be controlled; her function was improved (Exhibit 28F, page 8).

(R20-21).

Plaintiff has not offered evidence in the record (with the exception of the ALJ's first opinion) which would support her argument that the ALJ's RFC was not supported by substantial evidence. Instead, Plaintiff cites to her diagnosis of impingement syndrome of the right shoulder with a partial rotator cuff and the March 2011 right shoulder arthroscopy. (Pl.'s Mov. Br. at 18). As noted above, however, the ALJ considered Plaintiff's diagnosis and the corrective surgery. However, the existence of a diagnosis and corrective procedure alone do not necessitate a corresponding RFC finding, particularly where the record shows that the corrective procedure was successful. *See Salles*, 229 F. App'x at 145 ("In addition to the diagnoses, Salles was required to present evidence that these limitations *significantly* limited her ability to do basic work activities or impaired her capacity to cope with the mental demands of working.") (emphasis in original) (citing 20 C.F.R. §§ 404.1520(c), 404.1521(a); *Ramirez v. Barnhart*, 372 F.3d 546, 551 (3d Cir. 2004)).

### iii. Plaintiff's Diagnosis of Lumber Stenosis

Plaintiff further argues that the ALJ erred in step three of the sequential evaluation. (Pl.'s Mov. Br. at 19). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that either met or medically equaled a listed impairment—specifically, Sections 1.02 and 1.04 (Musculoskeletal Impairments). (R15). The ALJ found that "[t]hese sections are not satisfied because, despite the clinical symptom of chronic pain and finding of decreased lumbosacral range of motion, there has not been objective clinical or laboratory evidence of nerve root compression, spinal arachnoiditis, lumbar spinal stenosis, or problems with grip strength." (Id.).

13

Plaintiff takes issue with the ALJ's finding that "there has not been objective clinical or laboratory evidence of . . . lumbar spinal stenosis." (Pl.'s Mov. Br. at 19; R15). Specifically, Plaintiff references medical records of Dr. George S. Naseef, who examined Plaintiff on November 19, 2008, and wrote: "with regards to her lumbar sacral spine, she clearly has degenerative changes most pronounced at L3-L4 and L4-L5 with central stenosis. She may be a candidate for epidural steroid injections versus decompression of her L4-L5 stenosis . . . I do believe that her S1 joint pain and right-sided sciatic type symptoms are also an exacerbation of pre-existing disease." (Pl.'s Mov. Br. at 19; R498, 502).

In opposition, Defendant argues that "Plaintiff does not, and indeed cannot, argue that the ALJ's failure to note Dr. Naseef's 2008 diagnosis of lumbar spinal stenosis affected the ALJ's finding that Plaintiff did not meet or equal the criteria of listing 1.04." (Def.'s Br. at 11). The Court agrees.

"For a claimant to show his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see also Jones v. Barnhart*, 364 F.3d 501, 504 (3d Cir. 2004). Here, Plaintiff has not argued, either in her moving brief or in reply to Defendant's opposition, that any medical records relating to Dr. Naseef's 2008 diagnosis support that she meets the criteria of listing 1.04. Instead, Plaintiff's argument rests solely upon the existence of the diagnosis.

Additionally, Defendant argues, and Plaintiff does not dispute, that Plaintiff has not shown how the ALJ's failure to find that Plaintiff was diagnosed with lumbar spinal stenosis altered the ALJ's ultimately finding as to RFC. (Def.'s Br. at 12). "Plaintiff cannot make such an argument," Defendant contends, "because the ALJ's decision fully accounted for all of Plaintiff's credibly-

established limitations." (Id.). For example, at step two of the sequential evaluation, the ALJ found that Plaintiff had a severe "disorder of the back." (Id.; R15). Additionally, the ALJ's finding that Plaintiff suffered from a back disorder manifested in the ALJ's finding as to RFC. (Def.'s Br. at 12). For example, the ALJ limited Plaintiff to jobs to work that does not require "the use of ladders, ropes or scaffolds; that require only occasional use of ramps or stairs; and that require occasional balancing, stooping, frequent kneeling, occasional crouching, but no crawling." (R16).

In summary, while Plaintiff states that the ALJ did not reference Dr. Naseer's diagnosis, the Court finds that Plaintiff has failed to explain how this failure in any way altered the ALJ's ultimate finding that Plaintiff was not disabled.

### iv. Plaintiff's Side Effects from her Medications

Next, Plaintiff argues that "[i]n assessing the Plaintiff's concentration, persistence or pace, the ALJ failed to mention the Plaintiff's testimony regarding the negative and adverse impact that her medications have upon her, including loss of focus and loss of attention." (Pl.'s Mov. Br. at 20). Specifically, Plaintiff cites to her testimony with respect to the medications:

> They make me stupid. Sometimes I watch television, I don't know what I'm watching. I've gained 40 pounds since the accident. I have tremendous problems going to the bathroom. I'm incontinent in one way yet I'm always constipated from the medicine the other way. They had me on Skelaxin for awhile but that made me really nasty so they took me off of that. It's just I never took pills before.

(Id.; R20). According to Plaintiff, "[t]he ALJ failed to attribute any diminution in the Plaintiff's functioning to the adverse side-effects of the Plaintiff's medications." (Pl.'s Mov. Br. at 20).

As with Plaintiff's argument as to her back diagnosis, Plaintiff has not explained how the ALJ's failure to specifically mention her medication side effects in finding that Plaintiff had "moderate" limitations with respect to concentration, persistence, or pace caused the ALJ to

erroneously find that Plaintiff was not disabled.[2]  Notably, Plaintiff's RFC accounts for her difficulties in concentration, persistence, or pace by limiting Plaintiff to jobs that are

> simple and repetitive; that permit concentration in two hour blocks and then a break; that are low stress (that is, these jobs require only an occasional change in the work setting during the work day, only an occasional change in decision making required during the work day, and, if production based, production is monitored at the end of the day rather than consistently throughout it); and that require only occasional contact with supervisors, and co-workers, but no contact with the general public.

(R16).  Thus, the Court finds that the ALJ did not err in specifically mentioning each of Plaintiff's subjective complaints relating to side-effects from her medication.  This is particularly the case where the ALJ acknowledged Plaintiff's testimony that she was experiencing side effects from her medication and found Plaintiff's subjective complaints to be not entirely credible.  (R17-18).

### v.    Plaintiff's Mental and Psychological Impairments

Plaintiff argues that the ALJ erred at step three of the sequential evaluation process in her evaluation that "[t]he severity of [Plaintiff's] mental impairment does not meet or medically equal the criteria of listing 12.06." (R15; Pl.'s Mov. Br. at 20-26).  Specifically, Plaintiff maintains that "[t]he ALJ failed to consider all relevant evidence about the Plaintiff's mental impairment." (Pl.'s Mov. Br. at 21).

The ALJ explained her finding that Plaintiff's mental impairment does not medically equally listed impairment 12.06 as follows:

> In making this finding, I have considered whether the "paragraph B" criteria are satisfied.  To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration.  A marked limitation means more than

---

[2] In her reply brief, Plaintiff argues that if the ALJ had specifically mentioned these side-effects in her opinion, then she "would have been compelled by the medical and credible evidence to increase her (the ALJ's) assessment from 'moderate' to 'marked restriction,' thus rendering the Plaintiff fully disabled and entitled to total disability benefits." (Pl.'s Reply Br. at 9).  However, as discussed in detail below, because the ALJ determined that Plaintiff's subjective complaints were not credible, she was not required to accept these subjective complaints.

moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

(R15).

With respect to the first category—activities of daily living—the ALJ determined that Plaintiff had a "mild restriction." (R16). Specifically, the ALJ considered evidence in the record supporting that Plaintiff "is independent in personal hygiene; she has no problems dressing herself. She is able to make herself a light lunch; she is able to start supper. She is able to do laundry and light shopping." (Id.). The ALJ further noted Plaintiff's testimony that she is able to make the bed, dust, wash dishes by hand (but unable to use the dishwasher), and is able to drive short distances. (Id.). Finally, the ALJ noted that Plaintiff "tries to walk for exercise." (Id.).

Plaintiff argues that the ALJ improperly "picked and cho[]se" evidence from the record to support her finding that Plaintiff only had mild, as opposed to marked restriction in her activities of daily living. (Pl.'s Mov. Br. at 24-26). That is, Plaintiff states that the ALJ failed to consider that Plaintiff has "bad days" and instead focused only on Plaintiff's capabilities on a good day. (Id. at 24-25). Moreover, Plaintiff contends that even on a good day, her activities of daily living are limited. (Id. at 25). For example, she is limited in her ability to lift and carry, she cannot carry groceries from the trunk of her car to the house, she cannot put sheets on the bed, she cannot empty the dishwasher, and she must avoid activities that cause her to bend lest her back get "stuck." (Id.). Finally, Plaintiff argues that the ALJ disregarded the testimony of Plaintiff's daughter relating to Plaintiff's limited activities. (Id. at 24-25).

As Defendant notes, the ALJ's opinion specifically mentions the fact that Plaintiff has both good and bad days. (Def.'s Br. at 15; R18). The ALJ stated that Plaintiff "reported that her condition varied from day to day" (R17) and that "on 'bad days,' she stays in bed and cries."

(R18). Additionally, it is apparent form the ALJ's opinion that the ALJ considered the testimony of Plaintiff's daughter. (R18). Although the ALJ did not expressly recognize the limitations that Plaintiff's daughter testified to, the ALJ did note that Plaintiff's "daughter testified that she feels that her mother is in pain; she stated that she tries to help her with the puppies and with lifting things." (R18).

As to the second category—the Plaintiff's limitations as to social functioning—the ALJ found that Plaintiff had "moderate difficulties." (R16). Specifically, the ALJ stated that "[a]lthough [Plaintiff's] social circle is small, [Plaintiff] did not report any significant difficulties in maintaining her social relationships." (R16).

Plaintiff argues that the ALJ overlooked relevant evidence in the record when she found Plaintiff to suffer only moderately in the area of social functioning. (Pl.'s Mov. Br. at 23-24). For example, Plaintiff cites to her testimony that she is short-tempered and has no interest in people, and stays in bed some days. (Id.). Plaintiff also states that the ALJ overlooked evidence that Plaintiff's relationships with her daughter and her boyfriend deteriorated after the accident. (Id. at 24).

In a later part of her opinion, the ALJ did note Plaintiff's testimony that her boyfriend does not understand her pain, that she has had difficulties with her relationship with her boyfriend, and that he has moved in and out of her house a number of times. (R17). The ALJ also noted Plaintiff's testimony from the latest hearing that she now lives alone. (R18). The Court is, however, slightly troubled by the ALJ's failure to mention Plaintiff's daughter's testimony as to the nature of her and her mother's relationship as that testimony does bear upon Plaintiff's social functioning. However, the Court finds that the ALJ's determination that Plaintiff had only moderate difficulties in social functioning is nevertheless supported by the record. As Defendant notes, Plaintiff

reported that she has no trouble with authority figures (Def.'s Br. at 15; R335). Further, when completing the Social Security Administration's "Function Report-Adult" in March of 2010, Plaintiff answered "no" to the question of whether she has "any problems getting along with family, friends, neighbors, or others." (R333).

Finally, the ALJ determined that Plaintiff has moderate difficulties with concentration, persistence or pace. (R16). The ALJ explained this determination:

> As a result of her multiple orthopedic problems, [Plaintiff] stopped working; she describes her finances as dire. She reported that she developed anxiety and panic attacks, which contributed to her concentration difficulties (Exhibit 4E). However, [Plaintiff] retains the concentration to perform the activities of daily living reported above. Moreover, at the hearing, [Plaintiff] was able to answer all questions asked of her in an appropriate and timely manner, thereby demonstrating a level of concentration in the arguably stressful setting of a disability hearing.

(R16).

In addition to raising the above arguments with respect to the ALJ's specific findings as to areas of activities of daily living and social functioning, Plaintiff generally argues that the ALJ overlooked evidence of her mental impairment which would have resulted in a finding of a marked limitation in each of the above areas of mental functioning. (Pl.'s Mov. Br. at 20-23). Specifically, Plaintiff states that the ALJ failed to consider the Plaintiff's testimony that she has had suicidal ideation, her voluntary hospitalization that resulted in a diagnosis of Costochondritis and Anxiety, the fact that Plaintiff takes Xanax for her panic attacks and used to take Cymbalta for depression, and the testimony of Plaintiff's daughter relating to her relationship with her mothers. (Id.).

However, as Defendant points out, "Plaintiff's medical records reveal no mental health treatment apart from prescriptions for Xanax and Cymbalta from her primary care physician ([R]41, 100). Plaintiff's recent medical records do not reflect prescriptions for any psychotropic medications, including Xanax ([R]. 1186-89, 1193, 1197-1200, 1202-03, 1208-12). Although

Plaintiff alleges that the reason that she did not see a psychiatrist was that she did not want to become like her schizophrenic sister (R82; Pl.'s Mov. Br. at 22) there is no evidence that Plaintiff was ever referred for or required any additional mental health treatment." (Def.'s Br. at 16).

Moreover, notwithstanding the ALJ's findings that Plaintiff did not meet a listed impairment at step three of her evaluation, the ALJ nevertheless accounted for Plaintiff's mental limitations in issuing an RFC. That is, the ALJ limited Plaintiff to jobs "that are simple and repetitive; that permit concentration in two hour blocks and then a break; that are low stress (that is, these jobs require only an occasional change in the work setting during the work day, and, if production based, production is monitored at the end of the day rather than consistently throughout it; and that require only occasional contact with supervisors, and co-workers, but no contact with the general public." (R16). Accordingly, the Court upholds the ALJ's findings as to Plaintiff's mental impairment as supported by substantial evidence.

### C. Whether the ALJ Properly Assessed Plaintiff's Credibility

With respect to Plaintiff's credibility, the ALJ found, "[a]fter careful consideration of the evidence," that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible . . . ." (R18). Plaintiff argues that the ALJ failed to properly assess Plaintiff's credibility. (Pl.'s Mov. Br. at 26-27).

A subjective complaint alone cannot establish disability; objective medical evidence must be provided. 20 C.F.R. §§ 404.1528(a), 1529(a), 416.928(a); *see also Prokopick v. Comm'r of Soc. Sec.*, 272 F. Appx. 196, 199 (3d Cir. 2008) ("An ALJ is permitted to reject a claimant's subjective testimony as long as he or she provides sufficient reasons for doing so."). Instead, the ALJ must consider "all of the available evidence" when evaluating the intensity and persistence of

a claimant's symptoms, including objective medical evidence and a claimant's statements about her symptoms. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); see also Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) ("This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it."). However, an ALJ is not required to accept Plaintiff's testimony without question. The ALJ has discretion to evaluate Plaintiff's credibility and render an independent judgment in light of the medical findings and other evidence regarding the true extent of the alleged symptoms. Malloy v. Comm'r of Soc. Sec., 306 F. Appx. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)).

Here, after an extensive review of the medical evidence, the ALJ explained her credibility determination as follows:

> Careful consideration has been given to [Plaintiff's] subjective complaints (SSR 96-7p). The [Plaintiff's] allegations are not supported by the objective evidence in the record to the degree claimed. Although [Plaintiff] claims that she cannot work, in my opinion she reports rather significant activities of daily living. She is independent in personal hygiene: she reports no problems in dressing herself. The [Plaintiff] reported that she is able to make herself a light lunch: she is able to start supper; she is able to do laundry and light shopping; she is able to make the bed by straightening the comforter; she is able to drive short distances; she tries to walk for exercise. Based upon the entire record, including the testimony of [Plaintiff], I conclude that the evidence fails to support [her] assertions of disability.

(R22).

Plaintiff argues that the ALJ "failed to provide sufficient reasons to support her adverse credibility finding." (Pl.'s Mov. Br. at 26). In arguing that the ALJ erred in issuing her credibility determination, Plaintiff relies upon her arguments, addressed above, that the ALJ improperly selectively chose evidence to rely on and improperly rejected the opinions of Dr. Rubinfeld. However, because this Court has already addressed and rejected these arguments, the Court does

not find these arguments as applied to the ALJ's credibility determination to be persuasive. (Id.).
The Court is satisfied that the ALJ provided sufficient explanation as to her findings with respect
to the credibility of Plaintiff's subjective complaints.

### D. Whether the ALJ Appropriately Conveyed Plaintiff's Limitations to the Vocational Expert

Next, Plaintiff argues that the ALJ "failed to adequately convey the Plaintiff's credibly
established limitations in the hypotheticals to the vocational expert." (Pl.'s Mov. Br. at 27-29).
According to Plaintiff, "[t]his error was a direct result of the ALJ's previous errors, in which the
ALJ impermissibly 'picked and cho[]se' evidence from the record to support her Unfavorable
Decision, while disregarding relevant evidence that corroborated Plaintiff's disability status."
(Id.). However, the Court has already discussed and rejected these arguments, above, and therefore
is unpersuaded by Plaintiff's argument as the hypothetical questions posed to the Vocational
Expert.

### V.    CONCLUSION

For the reasons stated herein, the Opinion of ALJ Donna Krappa dated May 5, 2014,
finding that Plaintiff "was not disabled under Sections 216(i) and 223(d) of the Social Security
Act" is affirmed. Plaintiff's appeal is denied. An appropriate Order accompanies this Opinion.

IT IS SO ORDERED.

DATED:      June  12 , 2017

JOSE L. LINARES
CHIEF JUDGE, U.S. DISTRICT COURT